IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SONYA PRICE, individually, and as Representative of the Estate of David Price, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § § | Civil Action No. 3:16-CV-3237-D |
| LUPE VALDEZ, in her official and individual capacities, et al., | § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Sonya Price ("Sonya") brings this lawsuit arising from the death of her husband David Price ("David") while in the custody of the Dallas County Sheriff's Department. She sues defendant Dallas County Sheriff Lupe Valdez ("Sheriff Valdez") in her individual and official capacities, ten Deputy Doe defendants, ten Nurse Doe defendants, and ten Doctor Doe defendants. Sheriff Valdez moves to dismiss Sonya's lawsuit under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons that follow, the court grants the motion in part and denies it in part, orders Sonya to file a Rule 7(a) reply to the defense of qualified immunity, and permits Sonya to replead.

I

On September 14, 2014 David and Sonya had a domestic altercation.[1]  Shortly after leaving the scene of the altercation, David, who was 47 years old, was attacked and robbed. He suffered head injuries, was hospitalized, and was unconscious from the time of his hospitalization until October 9.  After David regained consciousness, he was released from the hospital and prescribed medication to prevent seizures, a common side effect of brain injuries.

On November 17 David was arrested and charged with domestic violence in relation to the September 14 altercation.  He was held in the Lew Sterrett Justice Center (the "Dallas County Jail") from November 17 until November 19.  David was released on a recognizance bond, based in part on his medical condition, and he was escorted out of the building when released, which was unusual.  Sonya alleges that, based on these facts, the Sheriff's

---

[1]In deciding Sheriff Valdez's Rule 12(b)(6) motion, the court construes Sonya's first amended complaint in the light most favorable to Sonya, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Sonya's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A Rule 12(b)(1) motion can mount either a facial or factual challenge.  *See, e.g., Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial.  *Id.*  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion."  *Id.*  (citation omitted) (citing *Paterson*, 644 F.2d at 523).

- 2 -

Department knew of David's medical condition from his prior head injury. She alleges that the Sheriff's Department knew that David had suffered a massive brain injury and been prescribed anti-seizure medication.

After he was released from jail on November 19, David returned home until November 21, when he was hospitalized for bleeding of his brain. He underwent brain surgery to relieve pressure on his brain and stop the internal bleeding. Approximately one third of his skull was removed from the left side of his head, and could not be replaced. As a result, David had a deep dent on the side of his head that was obvious even to a casual observer. David was fitted for a rigid plastic helmet to cover his head where his skull had been removed. The helmet was intended to take the place of his partially missing skull by protecting his brain from trauma or injury, and the presence of the helmet indicated a medical condition.

On December 16 David returned home from the hospital. At approximately 3:00 a.m. on December 17, he experienced a psychotic episode that involved knocking things around randomly in his kitchen. Sonya awoke and found David uncommunicative and disoriented. Sonya's son feared that his mother would be harmed by David's erratic behavior, and called 911. When the police arrived, David had calmed down and did not appear aggressive or emotional. The police nevertheless arrested David for domestic violence and took him to the Dallas County Jail. David was wearing his medically prescribed helmet when he left his house.

Dallas County Sheriff's deputies booked David into the Jail early on December 17.

In her first amended complaint, Sonya refers to these deputies as the Deputy Does, to non-physician medical personnel at the Jail as the Nurse Does, and to physicians at the Jail as the Doctor Does.  The Deputy Does removed David's medical helmet and placed him in a holding cell with bunk beds and a concrete floor, which was already occupied by one other detainee.  None of the defendants obtained information about David's medical condition, including his need for medication.  David was not provided with his prescribed medication at the Jail.

Sonya alleges that either qualified medical personnel were consulted and failed to provide needed care to David, or that qualified medical personnel were never consulted. Sonya began attempting to contact someone at the Jail early on December 17 to inquire about David and inform Jail personnel of his medical condition, but she was unsuccessful. Sheriff's Department records show that David was "bottom bunk restricted," but this note does not appear to have been enforced.

On December 18, at approximately 10:00 a.m., David fell from the top bunk in the holding cell.  He injured his head and broke his scapula in the fall.  He was taken to the hospital unconscious.  Sonya was not informed of David's condition until December 29, when her family's church bishop told her that David was in the hospital and in bad condition. David had been in a medically induced coma for several days in the doctors' attempt to control his brain bleeding and strokes.

David remained in the hospital for several months.  He was partially paralyzed and received physical therapy, speech therapy, and occupational therapy.  He suffered relapses

- 4 -

from his brain injuries, however, and on March 3, 2015 he went into a coma and was placed on a respirator.  David died on March 6.

Sonya alleges that the Sheriff's Department employed no or insufficient qualified medical personnel to evaluate the medical needs of incoming detainees.  She also asserts that the Sheriff's Department adheres to a policy of inadequately monitoring detainees with special needs, as evidenced by the fact that David's fall was reported by another detainee because it was not directly observed by any Jail personnel.  Sonya alleges that no Sheriff's Department personnel were reprimanded or punished for conduct in relation to David's death.

Sonya brings this lawsuit against Sheriff Valdez, in her official and individual capacities, the Deputy Does, Nurse Does, and Doctor Does.  Sonya alleges claims for violations of David's Fourteenth Amendment rights, under 42 U.S.C. §§ 1983 and 1985(3); violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; violations of the Texas Commission on Human Rights Act, Tex. Human Resources Code Ann. Ch. 121 (West 2013); negligence and gross negligence against the Deputy Does and Nurse Does; malpractice against the Doctor Does; and wrongful death.  Sheriff Valdez moves to dismiss the claims against her under Rule 12(b)(1) and 12(b)(6).  Sonya opposes the motion.[2]

---

[2]The court granted Sonya's unopposed motion to file additional pages in response to the motion to dismiss.  Accordingly, this memorandum opinion and order refers to Sonya's March 27, 2017 amended response and brief, and Sheriff Valdez's April 7, 2017 reply to Sonya's amended response.

II

The court begins by setting out the standards that apply to Sheriff Valdez's requests for relief under Rule 12(b)(1) and 12(b)(6).

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of Sonya's first amended complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal*

- 6 -

*Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and brackets omitted).  To survive a motion to dismiss under Rule 12(b)(6), Sonya must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (brackets omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[A] formulaic recitation of the elements of a cause of action will not do."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

- 7 -

III

The court begins with Sheriff Valdez's contention that, in her individual capacity, she is entitled to qualified immunity from Sonya's claims under 42 U.S.C. § 1983 and § 1985(3).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). It also applies to claims brought under 42 U.S.C. § 1985. *See Kinney v. Weaver*, 367 F.3d 337, 351-55 (5th Cir. 2004) (en banc) (addressing whether defendants were entitled to qualified immunity from § 1985 claim); *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 556 (5th Cir. 1997) (holding that defendant had qualified immunity as to claims under §§ 1983 and 1985). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the part[y] asserting the injuries, the facts [she has] alleged show that defendant['s] conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex.

Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.")).[3] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 284 (quoting *Thompson v.*

---

[3]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id.* The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 242.

*Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

"[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)).  Although a plaintiff may comply with ordinary pleading standards in her initial complaint, and need not anticipate a qualified immunity defense, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail" pursuant to Rule 7(a).  *Schultea*, 47 F.3d at 1433.  "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations."  *Id.*  "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury."  *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).  The case should not be allowed to proceed unless the plaintiff can assert specific facts that, if true, would overcome the defense.  *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]").  The "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when greater detail might assist."  *Schultea*, 47 F.3d at 1434; *see also Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses.").

- 10 -

IV

Because the first issue in the qualified immunity inquiry is whether a constitutional right has been violated, the court now considers whether Sonya has stated a claim on which relief can be granted under 42 U.S.C. § 1983.

A

"Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman*, 174 F.3d 498, 504 n.2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984)). "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates.  Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations and internal quotation marks omitted) (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).  Sonya bases her § 1983 claim on allegations that the unconstitutional conduct of Dallas County and its officers deprived David of due process under the Fourteenth Amendment.

Although the state has an important interest in the incarceration of pretrial detainees and convicted state prisoners,

> [t]he State's exercise of its power to hold detainees and prisoners . . . brings with it a responsibility under the U.S. Constitution to tend to the essentials of their well-being: "[W]hen the State by affirmative exercise of its powers so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs . . . it transgresses the substantive limits on state

> action set by the Eighth Amendment and the Due Process
> Clause."

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 638-39 (5th Cir. 1996) (en banc) (quoting

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). Convicted

prisoners derive their right to have these basic needs met from the Eighth Amendment's

prohibition on cruel and unusual punishment. *Id.* Pretrial detainees, on the other hand,

having not been adjudged guilty of any crime and therefore not punishable at all, derive their

protections from the due process guarantees of the Fourteenth Amendment. *Id.*; *Bell v.*

*Wolfish*, 441 U.S. 520, 535-36 (1979). These protections are said to be "at least as great as

. . . [those] available to a convicted prisoner." *Hare*, 74 F.3d at 639 (internal quotation marks

omitted). Therefore, because David was a pretrial detainee, the operative question is whether

Sonya has plausibly pleaded that he suffered a violation of his Fourteenth Amendment rights.

The applicable standard for making this determination depends on whether the

constitutional challenge is based on a "condition of confinement" or an "episodic act or

omission." *Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997) (citing

*Hare*, 74 F.3d at 644). Where the claim is based on a condition of confinement, "the

constitutional challenge is to the 'general conditions, practices, rules, or restrictions of

pretrial confinement.'" *Palo ex rel. Estate of Palo v. Dallas Cnty.*, 2007 WL 2140590, at *2

(N.D. Tex. July 26, 2007) (Fitzwater, J.) ("*Palo II*") (quoting *Hare*, 74 F.3d at 644). By

contrast, where the claim is based on an episodic act or omission, "the complained-of harm

is a particular act or omission of one or more officials, and the case focuses on 'whether [the]

- 12 -

official breached his constitutional duty to tend to the basic human needs of persons in his charge.'" *Id.* (quoting *Hare*, 74 F.3d at 645). Sonya raises both types of challenges, and the court addresses each in turn.

## B

The court first addresses whether Sonya has stated a claim based on the condition of confinement theory.

### 1

In a § 1983 condition of confinement case, the pretrial detainee attacks the general conditions, practices, rules, or restrictions of pretrial confinement, and courts apply a test that the Supreme Court announced in *Bell*. *See Hare*, 74 F.3d at 644. The *Bell* test is designed to "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word." *Bell*, 441 U.S. at 538. It requires the court to decide whether "the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.*

To determine whether the condition is an unconstitutional punishment, the court asks whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective[.]" *Id.* at 539. If it is, the condition or restriction does not amount to unconstitutional "punishment." *Id.* "Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may

- 13 -

not constitutionally be inflicted upon detainees *qua* detainees." *Id.* Unlike an episodic act or omission claim, a condition of confinement claim involves no independent inquiry into the jail official's state of mind, such as whether she acted with "deliberate indifference." *Palo II*, 2007 WL 2140590, at *2 (citing *Hare*, 74 F.3d at 643; *Grabowski v. Jackson Cnty. Pub. Defenders Office*, 47 F.3d 1386, 1398 (5th Cir. 1995)). This is because the conditions perpetuated by jail officials "manifest[] an avowed intent to subject a pretrial detainee" to those conditions. *Hare*, 74 F.3d at 644; *see also id.* ("[E]ven where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices."). Thus the inquiry in a condition of confinement case begins with the presumption that intent exists and applies the test articulated in *Bell*, upholding the condition or restriction only if it is reasonably related to a legitimate governmental objective. *Id.* at 644-45; *Bell*, 441 U.S. at 539.

2

Sheriff Valdez contends that Sonya has not stated a condition of confinement claim because David was not harmed by a general condition of confinement, but by a particular act or omission. *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (holding that claim arising from sexual assault by guard was not due to condition of confinement). Sheriff Valdez maintains that Sonya primarily complains of a particular act or omission, and only points derivatively to a policy that enabled the act or omission, and that such a claim does not properly challenge a condition of confinement. *See id.*; *see also Sibley v. Lemaire*, 184

F.3d 481, 487-88 (5th Cir. 1999) (holding that claim arising from mentally ill detainee's self-mutilation when left alone did not fit within condition of confinement category).

Sonya responds that the challenged condition is Dallas County's denial of medical care to detainees, that this condition is not reasonably related to a legitimate government interest, and that the condition caused David's injuries by depriving him of his anti-seizure medication and medical helmet. Sonya cites *Duvall v. Dallas County*, 631 F.3d 203, 208 (5th Cir. 2011), which held that Dallas County's failure to control a widespread bacterial infection among detainees was an unconstitutional condition of confinement, and *Shepherd v. Dallas County*, 591 F.3d 445, 453 (5th Cir. 2009), which held that Dallas County's failure to treat chronic illness among detainees was an unconstitutional condition of confinement.[4]

3

The court concludes that Sonya has not pleaded a plausible claim under a condition of confinement theory. A condition of confinement claim requires "a pervasive pattern of serious deficiencies in providing for [the detainee's] basic human needs," and cannot be established by "isolated examples of illness, injury, or even death, standing alone." *Shepherd*, 591 F.3d at 454. The facts alleged in the first amended complaint, without more,

---

[4]Sonya's brief also cites several reports, and findings from other litigation, about conditions in the Dallas County Jail. These documents do not bear on the motion to dismiss, however, because Sonya must allege the conditions that affected David, not those that existed years earlier, and also because "[t]he court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V*, 594 F.3d at 387.

do not plausibly plead the kind of widespread condition that was alleged, and later proved, in *Shepherd* or *Duvall*. Sonya has not alleged facts sufficient to establish the "facial plausibility" that is required at the pleading stage. *See Iqbal*, 556 U.S. at 678.

C

The court next considers whether Sonya has stated a claim based on the episodic act or omission theory.

1

As noted above, a § 1983 episodic act or omission claim is distinct from a condition of confinement claim because it involves a particular act or omission of one or more officials, whose intent to cause harm is not presumed. *See Hare*, 74 F.3d at 645. To state an episodic act or omission claim, Sonya must first allege that a county employee violated David's rights to medical treatment with "subjective deliberate indifference." *Johnson v. Johnson Cnty.*, 2006 WL 1722570, at *3 (N.D. Tex. June 21, 2006 (Fitzwater, J.) (citing *Flores*, 124 F.3d at 738). Second, to state a claim against Dallas County, Sonya must allege that the constitutional violation "resulted from a County policy or custom adopted or maintained with objective deliberate indifference." *Id.* (citing *Flores*, 124 F.3d at 738).

Subjective deliberate indifference "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (citing *Hare*, 74 F.3d at 645, 649). Rather, "[d]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner or detainee], ignored his complaints, intentionally treated him incorrectly, or

- 16 -

engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

In the context of an episodic failure to provide reasonable medical care to a pretrial detainee, this means that an official will not be found deliberately indifferent unless three elements are established: "1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm [to] occur." *Thompson*, 245 F.3d at 458-59.  Applying these principles to the present case, Sonya must identify an official who knew that David had a head injury, understood the risks of further injury from impact to his head, knew the appropriate level of treatment, was aware that David had been denied that level of treatment, and subjectively intended that this happen.  *See Shepherd v. Dallas Cnty.*, 2008 WL 656889, at *8 (N.D. Tex. Mar. 6, 2008) (Fitzwater, C.J.), *aff'd*, 591 F.3d 445, 449 (5th Cir. 2009).  It is not sufficient to allege that some personnel knew some of this information, and that others knew other facts, because knowledge is not to be imputed between coworkers.  *See Thompson*, 245 F.3d at 458-59 (describing subjective inquiry).

2

Sheriff Valdez contends that Sonya's first amended complaint fails to allege facts from which the court could draw the reasonable inference that any Dallas County personnel acted with deliberate indifference.  She maintains that negligent care or even medical

malpractice are insufficient to establish deliberate indifference.  *See Stewart v. Murphy*, 174

F.3d 530, 534 (5th Cir. 1999).  And she posits that deliberate indifference requires a refusal

to treat, ignoring medical complaints, intentionally incorrect treatment, or similar conduct

that indicates a wanton disregard for serious medical needs.  *See Domino*, 239 F.3d at 756.

Sheriff Valdez also contends that Sonya has not plausibly pleaded that the act or omission

resulted from a Dallas County policy or custom that was maintained with objective deliberate

indifference.  *See Hare*, 74 F.3d at 649 n.4.

Sonya responds that, based on facts asserted in the first amended complaint, Dallas

County personnel acted with subjective deliberate indifference to David's medical needs.

Sonya contends that, when David was booked into the Jail, he had a serious medical need

that would have been obvious even to the most unskilled layperson: his medical helmet and

a large dent in his head where part of his skull was missing.  *See Gobert v. Caldwell*, 463

F.3d 339, 349 (5th Cir. 2006) (holding that prisoner's open leg wound established substantial

risk of serious harm for purposes of subjective deliberate indifference).  She maintains that

Jail personnel then disregarded the excessive risk to David's safety when they deprived him

of his helmet and anti-seizure medication, and placed him in a cell that contained bunk beds,

another detainee, and a concrete floor.

Sonya also contends that Dallas County is liable for the constitutional violation

because it had a policy or custom of objective deliberate indifference to detainees' medical

needs, as evidenced by its liability for similar conduct in other cases.  *See Duvall*, 631 F.3d

at 208; *Shepherd*, 591 F.3d at 456.  And she posits that Sheriff Valdez is personally liable for

the actions of her subordinates because she failed to train and supervise them. *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (holding that § 1983 liability against supervisor may be established by failure to train or supervise).

3

The court concludes that Sonya has not plausibly pleaded an episodic act or omission claim because she has not plausibly alleged that any defendant was deliberately indifferent to David's injuries. Even if depriving David of his medical helmet and anti-seizure medication created a substantial risk of serious harm, Sonya has not alleged facts sufficient to show that any defendant subjectively intended that harm to occur. *See Thompson*, 245 F.3d at 458-59. Subjective intent that harm occur is an essential element of an episodic act or omission claim. *See, e.g.*, *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (holding that deliberate indifference was sufficiently alleged when guard ignored detainee's requests for treatment and told him to "man up" (alterations omitted)); *Scott*, 114 F.3d at 54 (holding that deliberate indifference was established when guard sexually assaulted detainee). Here, Sonya has at most alleged negligence or gross negligence, which is insufficient to establish the kind of "abuse of power" that is recognized as a constitutional violation under this theory. *See Hare*, 74 F.3d at 645 (internal quotation marks omitted).

V

In the qualified immunity inquiry, the court must next consider whether Sonya has stated a claim for violation of a constitutional right under 42 U.S.C. § 1985(3).

- 19 -

A

> In this circuit, a § 1985(3) claim must allege that "(1) the
> defendants conspired (2) for the purposes of depriving, either
> directly or indirectly, any person or class of persons of the equal
> protection of the laws, or of equal privileges and immunities
> under the laws, and (3) one or more of the conspirators
> committed some act in furtherance of the conspiracy; whereby
> (4) another person is injured in his person or property or
> deprived of having and exercising any right or privilege of a
> citizen of the United States; and (5) the action of the
> conspirators is motivated by a racial animus."

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001) (quoting

*Wong v. Stripling*, 881 F.2d 200, 202-03 (5th Cir. 1989)).

Sheriff Valdez contends that Sonya has not alleged the existence of a conspiracy, the

violation of a federal right, or the requisite motivation of discriminatory animus. In response,

Sonya contends that a conspiracy existed and that pretrial detainees are a protected class of

persons under the meaning of the statute.

B

The court concludes that Sonya has not plausibly pleaded a claim under § 1985(3)

because, at a minimum, she has not alleged facts supporting the existence of a conspiracy or

a motivation of racial animus. *See id.*

VI

At this stage, Sonya has not pleaded facts sufficient to overcome Sheriff Valdez's

affirmative defense of qualified immunity. The court concludes on its own initiative that

Sonya should be ordered to file a Rule 7(a) reply that addresses Sheriff Valdez's qualified

- 20 -

immunity defense. *See Schultea*, 47 F.3d at 1433. As set out in detail above, *see supra* §§ IV-V, Sonya has not yet plausibly pleaded a violation of David's federal rights, nor has she plausibly pleaded facts sufficient to hold Sheriff Valdez liable for the actions of Jail personnel through a failure to train or supervise.

VII

The court now turns to Sheriff Valdez's contention that she is entitled to official immunity from Sonya's state-law claims.

A

"[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity[.]" *Ferri v. Ackerman*, 444 U.S. 193, 198 (1979). "In Texas, '[a] governmental employee is entitled to official immunity: (1) for the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith.'" *McIntosh v. Partridge*, 540 F.3d 315, 326 (5th Cir. 2008) (quoting *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000)) (alteration in original). Official immunity is an affirmative defense, and Sheriff Valdez bears the burden of proving every element at trial or on summary judgment. *See Clark*, 38 S.W.3d at 580.[5]

---

[5]The Texas burden on the affirmative defense of official immunity is therefore different from the burden that applies to the federal defense of qualified immunity. When a defendant invokes qualified immunity as an affirmative defense, the burden is on the plaintiff to establish that the defendant is not protected because the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005) (addressing qualified immunity). To prevail, the plaintiff must show "genuine issues of material fact [exist] concerning the reasonableness" of the defendant's conduct. *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 490 (5th Cir. 2001).

Sheriff Valdez contends that she is entitled to official immunity because Sonya has not pleaded facts that would overcome the defense. Sonya does not substantively respond to this contention.

B

The court concludes that Sheriff Valdez is not entitled at this stage to official immunity from the state-law claims against her in her individual capacity. "'Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.'" *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint."). "In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Simon v. Telsco Indus. Emp. Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. Apr. 17, 2002) (Fitzwater, J.).

It does not clearly appear on the face of Sonya's amended complaint that Sheriff Valdez acted in good faith. Therefore, this defense is not established on the face of Sonya's first amended complaint. *See, e.g.*, *Randall v. L-3 Commc'ns Corp.*, 2017 WL 2189432, at

───────────────

"Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

*6 (N.D. Tex. May 18, 2017) (Fish, J.) (denying motion to dismiss based on official immunity because good faith element was not established by facts alleged in complaint). Accordingly, Sheriff Valdez has not established the defense of official immunity at this stage of the case.

## VIII

The court now turns to Sheriff Valdez's contention that, in her official capacity, she is entitled to sovereign immunity from Sonya's state-law claims against her.[6]

## A

A suit against an officer in her official capacity "is, for all practical purposes, a suit against the governmental entity, and the governmental entity is generally immune from claims for retrospective monetary relief." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (alterations and internal quotation marks omitted). With the exception of *ultra vires* actions, "an employee sued in [her] official capacity has the same governmental immunity, derivatively, as [her] government employer." *Franka v. Velasquez*, 332 S.W.3d 367, 382-83 (Tex. 2011). Texas has waived sovereign immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 2016). "In a suit against

---

[6]Immunity invoked by a local government unit such as Dallas County is more commonly described as governmental immunity than sovereign immunity, *see City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 518-19 (Tex. App. 2014, no pet.), but the standard for each is the same.

a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

Sheriff Valdez contends that neither Texas nor Dallas County has waived sovereign immunity for Sonya's claims. Sonya responds that the actions of Jail personnel in this case are within the waiver of sovereign immunity for "use of tangible personal or real property."

B

The court concludes that Sheriff Valdez is not entitled to sovereign immunity at this stage of the case because Sonya has alleged facts that, if proved, are within the § 101.021(2) waiver of sovereign immunity.

Under Texas law, prison or jail officials owe a duty of reasonable care to protect detainees from harm that is reasonably foreseeable. *See Salazar v. Collins*, 255 S.W.3d 191, 203 (Tex. App. 2008, no pet.) (holding that Texas prison had duty to inmates). Sonya alleges "that Defendants acted negligently in the use of tangible personal property (i.e., the jail cell and bunk beds), and thus any immunity from claims based on that conduct has been waived by Texas Tort Claims Act §§ 101.021 and 101.025." Am. Compl. ¶ 90. She asserts that "[b]y removing [David's] protective helmet and placing him in a cell with another detainee, a concrete floor, and a bunk bed from which [David] could easily fall, Defendants breached their duty of care." *Id.* at ¶ 92. Negligence that results in a fall from bed has been held to be a use of tangible or real property that is within the waiver of sovereign immunity. *See Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex. 1975) (per curiam) (holding

- 24 -

that hospital could not assert sovereign immunity if it negligently used bed without side rails). Accordingly, Sheriff Valdez is not entitled to sovereign immunity at this stage of the case.

IX

The court now turns to Sheriff Valdez's Rule 12(b)(6) motion to dismiss Sonya's claim for violation of the ADA.

A

Although the first amended complaint does not cite a specific provision, the parties agree that Sonya's claim is for a violation of Title II. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).

> A plaintiff states a claim for relief under Title II if he alleges: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.

*Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

- 25 -

B

Sheriff Valdez contends that Sonya has not stated a claim under Title II because the ADA only provides a remedy for discrimination, not inadequate medical treatment. *See Lee v. Valdez*, 2009 WL 1406244, at *13 (N.D. Tex. May 20, 2009) (Fitzwater, C.J.). She maintains that Sonya has not alleged the third required element of a Title II claim—that David was denied benefits or discriminated against because of his disability. *See Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) ("A plaintiff asserting a private cause of action for violations of the ADA . . . may only recover compensatory damages upon a showing of intentional discrimination."). She also contends that, because "public entity" in the statute does not include individuals, she cannot be individually liable under the ADA. *See Sims v. Tester*, 2001 WL 627600, at *1 (N.D. Tex. Feb. 13, 2001) (Fitzwater, J.).

Sonya responds that she has alleged all required elements of a Title II claim. She contends, first, that David suffered from a disability because of his head injury, and, second, that he was denied the benefits and services of a public entity when Jail personnel denied him his medical device, medication, and safe housing. As for the third element, Sonya appears to rely on a reasonable accommodation theory, and maintains that the Jail's failure to accommodate David's disability by providing him with safe housing and medical care amounts to discrimination on account of his disability. *See United States v. Georgia*, 546 U.S. 151, 157 (2006) ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [a plaintiff's] disability-related needs in such fundamentals as

- 26 -

mobility, hygiene, medical care, and virtually all other prison programs constituted exclusion from participation in or denial of the benefits of the prison's services, programs, or activities." (alterations and internal quotation marks omitted)).

C

The court concludes that Sonya has not pleaded a plausible claim under Title II of the ADA. She has not alleged that David suffered intentional discrimination because of his disability. *See Delano-Pyle*, 302 F.3d at 574. And although she asserts that David was denied medical care, she does not plausibly plead that such care was selectively denied because of his disability. *See Lee*, 2009 WL 1406244, at *13. The controlling case that Sonya cites in which a prisoner may have stated a claim for violation of Title II is distinguishable: in *United States v. Georgia* the plaintiff, a paraplegic inmate, alleged numerous violations besides denial of medical treatment, such as lack of accessible toilet and shower facilities and denial of access to the prison's programs and services on account of his disability. *See Georgia*, 546 U.S. at 155.

The court also concludes that Sonya cannot state a claim under Title II against defendants in their individual capacities because Title II imposes liability on public entities, not individuals. *See Sims*, 2001 WL 627600, at *1.

X

Finally, Sheriff Valdez contends that if the court dismisses Sonya's federal claims, it should decline to exercise supplemental jurisdiction over her state claims. Because the court is permitting Sonya to replead her federal claims, it denies this portion of Sheriff Valdez's

- 27 -

motion without prejudice.

XI

The court orders Sonya to file a Rule 7(a) reply that addresses Sheriff Valdez's qualified immunity defense. *See Schultea*, 47 F.3d at 1433. Because Sheriff Valdez has asserted the affirmative defense of qualified immunity, Sonya has a heightened burden. "[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin*, 77 F.3d at 121 (citing *Schultea*, 47 F.3d at 1433). "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes*, 168 F.3d at 161. The case should not be allowed to proceed against the public official unless the plaintiff can assert specific facts that, if true, would overcome the defense. *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]").

Within 28 days of the date this memorandum opinion and order is filed, Sonya must file a Rule 7(a) reply that alleges with particularity all material facts that she contends establish her right to recover under §§ 1983 and 1985 against each individual defendant for the violation of a constitutional or statutory right. *See Reyes*, 168 F.3d at 161.

The court dismisses Sonya's § 1983 and § 1985(3) claims, and (except as noted below) dismisses her ADA claim without prejudice, and will permit Sonya to replead. *See,*

*e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal).  To the extent Sonya's ADA Title II claim is asserted against defendants in their individual capacities, the dismissal is with prejudice, because no amendment could cure this defect.  But as for her other claims, and for her ADA claim remaining in part, because there is no indication that Sonya cannot or is unwilling to cure the pleading defects the court has identified, the court grants her 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

*    *    *

Accordingly, the court grants Sheriff Valdez's motion to dismiss in part and denies it in part, orders Sonya to file a Rule 7(a) reply, and grants her leave to replead.

**SO ORDERED**.

July 27, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 29 -